# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

NORMA BOOTENHOFF[1] and       )
EUGENE BOOTENHOFF,            )
                             )
           Plaintiffs,        )
                             )
v.                            )        Case No. CIV-11-1368-D
                             )
HORMEL FOODS                  )
CORPORATION, *et al.,*        )
                             )
           Defendants.        )

# O R D E R

Before the Court is Defendant International Paper Company's Motion for Summary Judgment [Doc. Nos. 230, 231]. Plaintiffs have responded to the Motion [Doc. No. 239] and Defendant has filed a reply [Doc. No. 247]. Also before the Court is Defendant International Paper Company's Combined Motion to Strike and Memorandum of Law in Support [Doc. No. 246] and Plaintiffs response thereto [Doc. No. 249]. These matters are fully briefed and ready for decision.

## I.    Background

This is a "take-home" or "secondary" asbestos exposure case. Plaintiffs contend Eugene Bootenhoff's clothing was contaminated with asbestos that he took home from the workplace and that his wife, Norma Bootenhoff, was exposed to asbestos when she laundered her husband's work clothes. Plaintiffs seek to impose liability on Defendant International Paper Company (IPC), through

---

[1] The Court docket reflects that Defendant International Paper Company filed an Entry of Suggestion of Death [Doc. No. 196] as to Plaintiff Norma Bootenhoff stating, upon information and belief, that she passed away on July 17, 2012. Plaintiffs have also represented in filings with the Court that Norma Bootenhoff passed away on this date and that the personal representative of the Estate of Norma Bootenhoff is Eugene Bootenhoff. *See, e.g.,* Plaintiff's Unopposed Motion for Leave to Amend Complaint [Doc. No. 243]. Accordingly, the Court hereby substitutes as Plaintiff, Eugene Bootenhoff as Personal Representative of the Estate of Norma Bootenhoff. Fed. R. Civ. P. 25(a); *see also Kynaston v. United States,* 717 F.2d 506, 508 (10th Cir. 1983) (noting district court's *sua sponte* substitution of personal representative of estate of decedent plaintiff where plaintiff died during pendency of litigation).

its predecessor companies, Wehyerhaueser and Hoernher Waldorf, and allege that the asbestos exposure occurred during Eugene Bootenhoff's former employment with these companies.[2]

Plaintiffs bring a negligence claim against IPC and seek to recover compensatory and punitive damages. IPC moves for judgment as a matter of law on Plaintiffs' negligence claim. IPC also moves for judgment as a matter of law, construing Plaintiffs' Second Amended Complaint to allege strict liability claims for products liability and/or engaging in an ultrahazardous activity. In responding to IPC's summary judgment motion, Plaintiffs do not address any strict liability claim and expressly concede they do not seek recovery against IPC on the basis of products liability. *See* Plaintiffs' Response at p. 9 ("Plaintiffs are not making product liability claims against [IPC]."). Therefore, the sole issue before the Court is whether IPC is entitled to judgment as a matter of law on Plaintiffs' negligence claim.

## II.    Standard Governing Summary Judgment

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and it is material "if under the substantive law it is essential to the proper disposition of the claim." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (internal quotation marks omitted). In making this determination, the Court must view the evidence, and draw

---

[2] Plaintiffs sued numerous Defendants, the majority of whom have been dismissed from this action.  At this stage in the proceedings, only three additional Defendants remain, Meadwestvaco Corporation, MW Custom Papers, LLC and Cleaver-Brooks, Inc.  Meadwestvaco and MW Custom Papers have moved for summary judgment [Doc. No. 190] and Cleaver-Brooks has also moved for summary judgment [Doc. No. 229].  Those motions will be addressed by separate orders.

reasonable inferences therefrom, in the light most favorable to the party opposing summary judgment. *Garrison v. Gambro, Inc.,* 428 F.3d 933, 935 (10th Cir. 2005).

"The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir.1998) (citation omitted). The burden then shifts to the nonmovant to "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id*. at 671 (citations omitted); *see also* Fed. R. Civ. P. 56(c)(1)(A). The nonmovant must identify facts by reference to affidavits, deposition transcripts or specific exhibits. *Id*. "The court need consider only the cited materials, but may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

## III.    The Record Before the Court

In its motion, IPC sets out a "Statement of Material Undisputed Facts" and identifies fourteen facts supported by citation to the summary judgment record. Plaintiffs, in their response brief, did not include a section stating which, if any of IPC's facts are either undisputed or immaterial, ignoring

the requirements of the Local Civil Rules of this Court.[3] When challenging the movant's assertion that a fact is undisputed, the responding party has the burden "to ensure that the factual dispute is portrayed with particularity, without . . . depending on the trial court to conduct its own search of the record ." *Cross v. The Home Depot*, 390 F.3d 1283, 1290 (10th Cir.2004) (quotations omitted).[4] If a nonmovant "fails to properly address another party's assertion of fact as required by Rule 56(c)," the fact may be deemed admitted for purposes of the motion. Fed.R.Civ.P. 56(e)(2). Accordingly, pursuant to LCvR 56.1 and Fed. R. Civ. P. 56(e)(2), IPC's Statement of Fact Nos. 1-14 are deemed admitted for purposes of this motion. These and additional facts discussed *infra*, are established by the summary judgment record.

## Material and Undisputed Facts

IPC is a Delaware corporation. IPC is a defendant in this action because of its acquisition of a Weyerhaeuser box manufacturing plant in Austin, Minnesota and a Hoerner Waldorf box manufacturing plant in Denver, Colorado. The parties agree that, as to IPC and its predecessors, any

---

[3] Pursuant to the Local Civil Rules of this Court:

The brief in opposition to a motion for summary judgment (or partial summary judgment) shall begin with a section which contains a concise statement of material facts to which the party asserts issues of fact exist. Each fact in dispute shall be numbered, shall refer with particularity to those portions of the record upon which the opposing party relies and, if applicable, shall state the number of the movant's facts that is disputed. All material facts set forth in the statement of the material facts of the movant may be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of material facts of the opposing party.

LCvR 56.1(c).

[4] Plaintiffs include citation to evidence throughout the body of the legal argument presented in their response brief. Many of the citations are to exhibits that are voluminous and made without specific reference to factual matters Plaintiffs attempt to establish by the exhibits. The Court is "not obligated to comb the record" to determine the basis for a claim that a factual dispute exists. *Mitchell v. City of Moore, Oklahoma*, 218 F.3d 1190, 1199 (10th Cir.2000).

alleged asbestos exposure occurred in either Minnesota or Colorado.[5]  They do not contend that any

exposure occurred in Oklahoma.  However, IPC states that Eugene Bootenhoff worked "as plant

manager of the Hoerner Waldorf/Champion International box plant in Oklahoma City from 1976

until his retirement in 1998." According to IPC, "[t]his is the very same IPC legacy company that

owned the plant in Denver, Colorado."  *See* IPC's Reply [Doc. No. 247] at p. 5 n. 5.[6]

Eugene Bootenhoff worked at Weyerhaueser in Austin, Minnesota from 1955 through 1966.

He held three different jobs during the period of his employment.  First, he was a printing press

operator from 1955 until 1958.  He did not work with or around any asbestos-containing products

in this position.  Next, he worked in quality control in 1959.  On two different occasions while in

this position, Eugene Bootenhoff removed and installed asbestos-containing pipe insulation on a

corrugating machine at the warehouse.  The work lasted an hour or two on each occasion. It is the

only direct exposure to asbestos he experienced during his employment at either of IPC's

predecessors.  Finally, he worked as a plant supervisor from 1960 until 1966.  While a plant

supervisor, Eugene Bootenhoff did not personally handle asbestos-containing products.

By 1972, the Bootenhoffs had moved to Colorado, and from 1972 until 1976 Eugene

Bootenhoff worked as a plant supervisor at Hoerner Waldorf.  He did not personally handle asbestos-

containing products in this position.

---

[5]The record indicates both Norma Bootenhoff and Eugene Bootenhoff may have been exposed to asbestos from sources other than IPC's predecessors, including evidence of direct exposure to asbestos in their home during a home construction project. That evidence, however, is not material to the determination of the issues before this Court.

[6]According to IPC's discovery responses, Hoerner Waldorf merged with Champion in 1977 and Champion merged with IPC in 2000.  *See* IPC's Responses to Plaintiffs' Interrogatories [Doc. No. 239-29], Preliminary Statement at p. 2.

Significantly, neither Weyerhaueser nor Hoerner Waldorf manufactured asbestos -containing products. Instead, the record shows that asbestos was "more likely than not" present at their facilities in pipe insulation and in insulation contained within equipment used in operations at these facilities for the manufacturing of boxes.[7] There is no evidence that the boxes manufactured by the companies contained asbestos. As stated, the undisputed facts show that after 1959 Eugene Bootenhoff had no direct exposure and that the two occasions in 1959 during which he did experience direct exposure were limited. In addition, Norma Bootenhoff was never directly exposed to asbestos at Weyerhaeuser or Hoerner Waldorf.

It is further undisputed that the Bootenhoffs have lived in Oklahoma since 1976. Norma Bootenhoff's estate was probated in Oklahoma and Eugene Bootenhoff continues to reside in Oklahoma.

Finally, it is undisputed that Norma Bootenhoff was first diagnosed with mesothelioma in August 2009, while domiciled in Oklahoma. Plaintiffs have presented no evidence that Norma discovered the disease, or suffered symptoms of the disease, while she resided in either Minnesota or Colorado. Moreover, the record shows that Eugene Bootenoff does not have an asbestos-related disease or any other medical condition as a result of his work with or around equipment or materials containing or utilizing asbestos.

---

[7] The parties provide only cursory discussion of the source of asbestos at the companies. One exhibit includes "survey results" from 1988 of "asbestos containing materials" at Weyerhauser. *See* Doc. No. 239-19. With respect to the Austin, Minnesota facility, the survey concludes that "[a]sbestos was detected in the pipe lagging located along the backside of the corrugator," that asbestos-containing materials were present in areas of the maintenance shop and walkway outside of the employee lunchroom, and that asbestos was present in "transite panels on the outside of the building." *Id.* 239-19 at p. 4. While the Court notes this evidence for context, it is not material to the summary judgment determination.

Eugene Bootenhoff also testified that the boiler at the Weyerhaeuser plant contained asbestos. The boiler was encased in metal and Mr. Bootenhoff testified that he never had to perform work inside the boiler. *See* Deposition of Eugene Bootenhoff [Doc. No. 231-1] at p. 44:21 - 45:9.

IV. **Discussion**

A. **Choice of Law**

The parties dispute the applicable law governing Plaintiffs' negligence claim. Plaintiffs contend the claims are governed by Minnesota or Colorado law where Eugene Bootenhoff worked for Weyerhaeuser and Hoerner Waldorf, respectively.[8] IPC urges application of Oklahoma law because Oklahoma is where Plaintiffs have been domiciled and where IPC contends the injury to Norma occurred.

"A federal court sitting in diversity . . . must apply the substantive law of the forum state, including its choice of law rules." *Otis Elevator Co. v. Midland Red Oak Realty Inc.*, 483 F.3d 1095, 1101 (10th Cir.2007). Thus, the Court looks to Oklahoma's choice-of-law rules in determining what law to apply.[9]

**Oklahoma's Most Significant Relationship Test**

Under Oklahoma's choice-of-law rules, this Court must apply the tort law of the state with the most significant relationship to the occurrence and the parties. *See Hightower v. Kan. City Southern Ry. Co.*, 70 P.3d 835, 842 (Okla.2003) ("[T]he rights and liabilities of parties with respect to a particular issue in tort should be determined by the law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties.") (internal quotation

---

[8]As to Defendant Cleaver-Brooks, Inc., Plaintiffs contend Minnesota, Colorado *and* Arkansas law should apply. Plaintiff also contends Arkansas law should apply to its claims against Meadwestvaco and MW Custom Papers, LLC. Plaintiff does not, however, urge application of Arkansas law to the issues raised in the present motion and the Court, therefore, need not address application of Arkansas law here.

[9]IPC has urged application of the "false conflict" doctrine and contends that regardless of whether Oklahoma, Colorado, or Minnesota law applies, the result would be the same and, therefore, the Court should avoid the choice of law question. However, the Oklahoma Court of Civil Appeals has found "application of such a doctrine inconsistent with Oklahoma's choice of law rule." *In re Farmers Med-Pay Litigation*, 229 P.3d 551, 559 n. 13 (Okla. Civ. App. 2009). Therefore, the Court proceeds to address the choice of law issue.

marks omitted). This test, adopted from the Restatement (Second) of Conflict of Laws § 145 (1971), requires the consideration of four factors: (1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship, if any, between the parties occurred. *Id*. (internal quotation marks omitted); *see also Brickner v. Gooden*, 525 P.2d 632, 637 (Okla. 1974). These contacts are to be evaluated according to their relative importance with respect to the particular issue. *Hightower*, 70 P.3d at 842.

### 1.    Place of injury

Plaintiffs contend the place of injury is the place of their exposure to asbestos – either Minnesota or Colorado.[10] IPC contends the place of injury is Oklahoma, where Norma Bootenhoff was diagnosed with mesothelioma.

This Court has found no case applying Oklahoma's choice-of-law rules to address the place-of-injury factor in the context of a latent disease case. However, cases have addressed Oklahoma law in a related context – determining when a claim for personal injury accrues.

Under Oklahoma law a claim does not accrue until the plaintiff first could have maintained his action to successful conclusion. *Sherwood Forest No. 2 Corp. v. City of Norman*, 632 P.2d 368, 370 (Okla. 1980). In *Williams v. Borden*, 637 F.2d 731, 734 (10th Cir. 1980), the Tenth Circuit, applying Oklahoma law, held that "a claim for personal injury from an occupational disease allegedly produced by the cumulative effect of a dangerous product does not accrue until the plaintiff knows or as a reasonably prudent person should know, that he has the condition for which the action is

---

[10] Plaintiffs do not attempt to demonstrate, as between these two states, where the exposure was greatest. In fact, Plaintiffs make no argument whatsoever as to which of these states has the most significant relationship to the occurrence and the parties.

brought and that defendant has caused it." The Oklahoma courts have subsequently ruled in conformity with *Williams*. *See Daugherty v. Farmers Co-op Ass'n*, 689 P.2d 947 (Okla. 1984); *see also Sloan v. Canadian Valley Animal Clinic, Inc.*, 719 P.2d 474, 475 (Okla. Civ. App. 1986) (where the plaintiff's diagnosis was uncertain and given the lapse of time before she knew the cause of her illness, limitations period did not begin to run until the plaintiff was aware of her injury).

Moreover, Oklahoma's recent enactment of its Asbestos and Silica Claims Priorities Act, Okla. Stat. tit. 76, §§ 90 *et. seq.*, supports this analysis. Section 100(A) of the Act provides that the limitations period shall not begin to run with respect to any asbestos claim "until the exposed person or claimant discovers, or through the exercise of reasonable diligence should have discovered, that the exposed person or claimant is physically impaired [by the asbestos-related] condition." Okla. Stat. tit. 76, § 100(A) (Supp. 2013).

Consistent with Oklahoma's accrual analysis, other courts have concluded, in the choice-of-law context, that the place of injury is the place where a latent asbestos-related disease is first detected, and not where the exposure occurred. *See Pounders v. Enserch E&C, Inc.*, 306 P.3d 9, 13 (Ariz. 2013) (recognizing that under the Second Restatement, place of injury is where the "last event necessary for liability occurs" and that "[f]or long latency diseases, the 'last event' takes place when the disease is discoverable because, until then, a legally compensable injury does not exist"); *Wyeth v. Rowatt*, 244 P.3d 765, 776 (D. Nev. 2010) ("[T]he place of injury is the state where the slow-developing disease is first ascertainable, which is the last event necessary for a claim against a tortfeasor.").

Plaintiffs contend that "numerous other courts" have held the place of exposure is the place of injury. But the cases relied upon by Plaintiffs in support of that contention are inapposite. In

9

those cases the courts assumed the place of exposure to be the place of injury without needing to analyze the issue and made the choice-of-law determination on other grounds. *See Krik v. BP America, Inc.*, No. 10-07435, 2012 WL 2914229 (E.D. Pa. May 15, 2012) (unpublished op.) (the defendant sought application of Indiana law based solely on the plaintiff's request to consolidate the action with one brought in Indiana; court applied Illinois law because the plaintiff alleged injury from exposure to asbestos in Illinois and defendant's reason for application of Indiana law was not compelling); *Normann v. Johns-Manville Corp.*, 593 A.2d 890 (Penn. Super. Ct. 1991) (court applied New York law instead of Pennsylvania law; only contact Pennsylvania had to the occurrence and the parties is that it was the forum state and plaintiff's exposure to asbestos – as related to the defendant sued – occurred only in New York where the plaintiff was a resident and where the relationship of the parties was centered)*; Tysenn v. Johns-Manville Corp.*, 517 F. Supp. 1290 (E.D. Penn. 1981) (the plaintiff was a resident of New Jersey and was treated for injuries in New Jersey but was employed in Pennsylvania and first exposed to asbestos there; because issue before the court was whether plaintiff's exclusive remedy against his former employer was under the Pennsylvania Occupational Disesase Act, the court concluded Pennsylvania law applied because worker's compensation issues were involved and the state of employment, therefore, would be particularly interested in the outcome). Therefore, the Court rejects Plaintiffs' contention that the place of exposure is the place of injury.

Based on Oklahoma law addressing the related concept of accrual of a cause of action, and persuasive authority from other jurisdictions addressing choice of law, the Court finds the place of injury is the place of diagnosis. Because Norma Bootenhoff first suffered symptoms in Oklahoma and was diagnosed with mesothelioma in Oklahoma, the place of injury is Oklahoma. This finding

is further compelled under the circumstances here, where Plaintiffs make no effort to identify, as between Colorado and Minnesota, where the more significant exposure may have occurred.

### 2. Place of Conduct

Plaintiffs contend IPC's conduct, through its predecessors, occurred entirely within Minnesota and Colorado. IPC does not refute Plaintiff's contention, but argues that the place of conduct factor does not favor one state over another because the alleged conduct is spread over multiple states. *See, e.g, Patten v. General Motors Corp., Chevrolet Motor Div.*, 699 F. Supp. 1500, 1505 (W.D. Okla. 1987) (finding place of conduct factor of less importance where conduct causing the injury occurred in many different states). The Court agrees, particularly given Plaintiffs' failure to identify any specific facts that might demonstrate more significant conduct in one state over another.

### 3. Domicile

As set forth above, the Bootenhoffs have lived in Oklahoma since 1976. Norma Bootenhoff was domiciled in Oklahoma at the time of her diagnosis of mesothelioma as well as at the time of her death. Her estate was probated in the State of Oklahoma and Eugene Bootenhoff continues to reside in Oklahoma. These facts weigh in favor of application of Oklahoma law. *Compare Gregory v. Beazer East*, 892 N.E.2d 563, 584 (Ill. App. 2008) (holding Indiana law applied to the plaintiff's negligence claim arising from asbestos exposure on grounds including a state's "interest in compensating its own domiciliaries for their injuries," the fact that "a state normally formulates its torts and compensation policies with its own particular domiciliaries in mind," state of domicile "most clearly feels the social and economic impact of an injured party's tort recovery" and/or "when

11

dealing with decedents, the state of domicile is the one concerned with administration of estates, including the adequacy of compensation to the beneficiaries").

IPC is a Delaware corporation. IPC conducted business in the state of Oklahoma through its predecessor company, Champion. As noted, Plaintiffs do not claim exposure to asbestos at the plant in Oklahoma City. Nonetheless, given Plaintiffs' lengthy residence in and significant ties to the State of Oklahoma, this factor weighs in favor of Oklahoma law.

### 4.    Place of Relationship

Plaintiffs contend that like the place of conduct, the place of relationship between the parties is Minnesota and Colorado. IPC contends this factor is of less importance given the fact that two states are involved but further points out that some relationship existed between it and Eugene Bootenhoff in the state of Oklahoma based on his employment at Champion in Oklahoma City. The Court finds, as with the place of conduct factor, that this factor does not compel a particular result. Moreover, the relationship of the parties is attenuated at best. Norma Bootenhoff had no relationship with Weyerhaeuser or Hoerner Waldorf. Furthermore, IPC's only relationship with Plaintiffs is through its predecessor companies.

### 5.    Application of Factors

The Court concludes that Oklahoma has the most significant relationship to the occurrence and the parties. The place of injury is Oklahoma, the Bootenhoffs have been domiciled in Oklahoma for well over thirty years, Norma Bootenhoff discovered and was diagnosed with mesothelioma in Oklahoma, she died in Oklahoma, her estate was probated in Oklahoma and Eugene Bootenhoff continues to reside in Oklahoma. Thus, two of the four factors – place of injury and domicile, weigh in favor of Oklahoma law. And, as set forth, the remaining two factors – place of conduct and place

of relationship – are of less importance where, as here, multiple states are involved. Indeed because Plaintiffs fail to demonstrate whether Minnesota or Colorado has the more significant relationship it necessarily follows that neither Minnesota nor Colorado can be deemed to have the *most* significant relationship to the occurrence and parties. Moreover, though tangential, some relationship between the parties exists in Oklahoma based on Eugene Bootenhoff's employment at Champion in Oklahoma City. Under these circumstances, therefore, Oklahoma law governs. *Compare Matter of New York City Asbestos Litigation*, 921 N.Y.S.2d 466, 475 (N.Y. Sup. Ct. 2011) (applying "grouping of contacts" choice-of-law test and finding that although exposure to asbestos occurred in New York, Oregon law applied because it was in Oregon where the plaintiff was domiciled for almost seventeen years, where the plaintiff was stricken with mesothelioma, where the plaintiff died, and where her estate was probated); *see also* Restatement (Second), § 145, Comment on Subsection (1), ¶ (c) (where "the tort rule is designed primarily to compensate the victim for his [or her] injuries, the state where the injury occurred, which is often the state where the plaintiff resides, may have the greater interest in the matter").

This conclusion is further supported by Restatement (Second) of Conflict of Laws § 146 which provides that in personal injury actions, the law of the place of injury determines the rights and liabilities of the parties unless some other state has a more significant relationship to the occurrence and the parties. Oklahoma courts have relied upon Restatement § 146 in determining choice of law in a personal injury action. *See Edwards v. McKee*, 76 P.3d 73, 76 (Okla. Civ. App.

2003). The record before the Court does not show that some other state has a more significant

relationship to the parties than Oklahoma, the place of injury.[11]

As a final matter, the Court recognizes that Oklahoma has further adopted as relevant to the

choice-of-law determination the factors set forth in Restatement (Second) of Conflicts § 6. *See*

*Ysbrand v. Daimler Chrysler Corp.*, 81 P.3d 618, 625 (Okla. 2003) *Beard v. Viene*, 826 P.2d 990,

995 (Okla. 1992).[12] Plaintiffs have not addressed these policy factors. IPC, however, notes that of

the three states' laws at issue, only Oklahoma law has been applied to determine the issue of legal

duty in the context of take-home exposure to asbestos. *See* discussion, *infra*. IPC contends

therefore, that the policy considerations of "certainty, predictability and uniformity of result" and

---

[11] The Court respectfully disagrees with the conclusion in *Pounders,* under facts similar to those presented here, that the place of injury was merely "fortuitous" and therefore, did not direct application of that forum state's law. *Pounders*, 306 P.3d at 13-14. In most cases the place of injury is fortuitous where a plaintiff is injured while "in transit." *See, e.g., Jaurequi v. John Deere Co.*, 986 F.2d 170, 175 (7th Cir. 1993); *see also Brickner*, 525 P.2d at 638 (noting the "undesirability" of holding that "the rights and obligations of the parties should be subject to change as the aircraft crossed the boundary lines of each jurisdiction.") (citation omitted). An injury that occurs while parties are "in transit" is quite distinct from injury resulting from a latent disease --the circumstances the Court faces here. Moreover, in *Pounders*, unlike the present case, there was only one state where the conduct causing the injury occurred and, therefore, the court gave this factor particular weight. *Pounders*, 306 P.3d at 15.

[12] Under section 6 of the Restatement, those factors include:

    (a) the needs of the interstate and international systems,

    (b) the relevant policies of the forum,

    (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

    (d) the protection of justified expectations,

    (e) the basic policies underlying the particular field of law,

    (f) certainty, predictability and uniformity of result, and

    (g) ease in the determination and application of the law to be applied.

*Ysbrand*, 81 P.3d at 625.

"ease in determining the applicable law" bolster application of Oklahoma law. The Court agrees that these policy considerations further weigh in favor of application of Oklahoma law.

**B.** **Negligence**

**1.** *Duty of Care*

Under Oklahoma law, whether IPC is entitled to summary judgment on Plaintiffs' negligence claim requires the Court to first address a threshold issue– whether IPC owed a duty of care to Norma Bootenhoff. *See Lowery v. Echostar Satellite Corp.*, 160 P.3d 959, 964 (Okla. 2007) (if no duty of care exists, "there can be no liability for negligence as a matter of law"). Duty of care is an issue of law to be decided by the court. *Id.*

The relationship of the parties is a factor to be considered to determine duty of care, but is not singularly dispositive. Instead, "a person owes a duty of care to another person whenever the circumstances place the one person in a position towards the other person such that an ordinary prudent person would recognize that if he or she did not act with ordinary care and skill in regard to the circumstances, he or she may cause danger of injury to the other person." *Id.*

The Oklahoma courts have not addressed whether an employer may be liable to the spouse or other household family member of the employee as a result of "take-home" or secondary exposure to asbestos.[13] "In the absence of [Oklahoma] law directly on point, [the Court] attempt[s] to predict how [Oklahoma's] highest court would rule." *F.D.I.C. v. Schuchmann*, 235 F.3d 1217, 1225-26 (10th Cir. 2000); *see also Strauth v. National Union Fire Ins. Co. of Pittsburgh*, 236 F.3d 1260, 1267 (10th Cir. 2001) (accord).

---

[13] The parties have not cited any decisions addressing the issue under Minnesota or Colorado law and it appears the issue would similarly be a matter of first impression under the laws of those states.

The Court finds guidance, however, in Tenth Circuit authority applying Oklahoma law. In *Rohrbaugh v. Owens-Corning Fiberglass Corp.*, 965 F.2d 844, 847 (10th Cir. 1992) (*Rohrbaugh I*), the Tenth Circuit held that the wife of an insulator who worked with asbestos was not a foreseeable user of the products and, therefore, no duty to warn was owed to the wife under Oklahoma's products liability law. As in this case, in *Rohrbaugh*, the wife developed mesothelioma and claimed she had been exposed to asbestos dust when she laundered her husband's work clothes. A jury returned a verdict in favor of the plaintiffs and the defendants appealed, alleging jury instruction error. According to the defendants, the instructions imposed on them a duty to warn, contrary to Oklahoma law.

The Tenth Circuit found the undisputed evidence at trial established that it was unknown at the time of the wife's exposure that the type of asbestos associated with the defendants' products could cause mesothelioma. *Id.* at 847 ("The evidence before the jury was clear that prior to 1969, the last date of the decedent's exposure to Appellants' products, it was unknown that amosite or chrysolite asbestos fibers could cause mesothelioma."). Based on this determination, the court found the instructions to the jury were erroneous. The court vacated the judgment and remanded the case for a new trial. *Id.* at 847.

On remand, the defendant moved for summary judgment and the district court, applying the law of the case, determined summary judgment in favor of the defendant was proper. The plaintiffs then appealed the judgment entered in favor of the defendant. In *Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181 (10th Cir. 1995) (*Rohrbaugh II*), the Tenth Circuit affirmed. The Tenth Circuit noted that on remand, the plaintiffs had failed to produce any additional evidence to create an issue of fact concerning the lack of foreseeability and upheld summary judgment in favor of the defendant. *Id.*

16

at 1183. The court further determined summary judgment was proper in favor of the defendant on

the plaintiffs' negligence claim; the defendant owed no duty to the plaintiffs due to the same lack

of foreseeability. *Id*. at 1183-84. The court held:

> The threshold question in a negligence action is whether the defendant owed a duty
> to the plaintiff allegedly harmed. *Wofford v. Eastern State Hosp*., 795 P.2d 516, 518
> (Okla.1990). The most important consideration in this determination is whether the
> plaintiff is foreseeably endangered by the defendant's conduct. *Id*. at 519. Because
> of our holding in *Rohrbaugh I* that Mrs. Palmer was not a foreseeable purchaser or
> user of the product manufactured by OCF and that Defendants "could not have
> foreseen that Mrs. Palmer would be exposed to their products in the manner in which
> she was[,]" the threshold question of duty is not satisfied. *Rohrbaugh*, 965 F.2d at
> 846. In the absence of any additional evidence presented by Plaintiffs, we follow the
> law of *Rohrbaugh I*.

*Id*. at 1183-84.

In a later case, *Carel v. Fibreboard Corp.*, No. 94-5222, 1996 WL 3917 (10th Cir. Jan. 4,

1996) (unpublished op.), the plaintiffs brought a wrongful death action alleging that their deceased

mother, Mary Lowry, had been exposed to asbestos brought home on her husband's work clothes

when she laundered his clothes. The alleged exposure occurred during the time period 1950 to 1977

and the plaintiffs contended that the exposure caused the decedent to develop mesothelioma.

Following *Rohrbaugh I and II*, the Tenth Circuit upheld summary judgment in favor of the defendant

relying on its holding that "an Oklahoma manufacturer has no duty to warn when the injured party

'was never exposed to asbestos as a user or present where the product was used.'" *Carel*, 1996 WL

3917 at *4. In reaching this conclusion, the court rejected the plaintiffs' argument that the

defendant's failure to warn of the dangers of asbestos was a foreseeable cause of Mary Lowry's

death. *Id*.

IPC contends the *Rohrbaugh* and *Carel* decisions are dispositive and direct summary judgment in its favor. Plaintiffs contend these decisions are not controlling because they do not bring a product liability claim against IPC. *See* Plaintiffs' Response at p. 9. But Plaintiffs ignore that in *Rohrbaugh II*, the Tenth Circuit clearly determined that the plaintiffs' negligence claim also failed as a matter of law because no duty of care was owed to the injured party.

Plaintiffs further contend the *Rohrbaugh I* decision was based on the evidence presented to the jury *in that case* which failed to demonstrate a foreseeable risk of harm at the time of the exposure alleged to have occurred, at the latest, in 1969. Plaintiffs contend that the evidence they submit to this Court "shows that take home asbestos exposure was a foreseeable danger since the 1940s." *Id*. The Court therefore considers the evidence presented by Plaintiffs, subject to the standards governing the manner of their presentation of that evidence discussed *supra*.

### a. Foreseeability

Under Oklahoma law, "[t]he most important consideration in determining the existence of a duty of care is foreseeability of harm to the plaintiff." *Lowery*, 160 P.3d at 964. As the Oklahoma Supreme Court has stated:

> Generally, a defendant owes a duty of care to the plaintiff who is foreseeably endangered by defendant's conduct with respect to all risks that make the conduct unreasonably dangerous. Foreseeable risk of harm establishes a zone of risk to assess whether defendant's conduct created a generalized and foreseeable risk of harm to plaintiff, by a reasonable prudent person standard. Foreseeable risk of harm that will lead the law to say a particular plaintiff is entitled to protection will not generally be extended beyond reason and good sense.

*Id*. (internal citations omitted).

IPC contends that in 1959, the time period during which Eugene Bootenhoff allegedly had direct exposure to asbestos, the risk of developing mesothelioma from secondary or take-home

18

exposure was not foreseeable. In this regard, IPC notes that "Mr. Bootenhoff's alleged asbestos handling occurred a full decade earlier than asbestos work performed in *Rohrbaugh*." *See* IPC's Motion at p. 15. IPC further contends the risk was not foreseeable through 1976 because Eugene Bootenhoff did not have any direct exposure to asbestos during that time period, but only indirect exposure through his supervision of other workers who *sometimes* handled asbestos-containing products. *Compare Carel*, 1996 WL 3917 at * 4 (finding no duty to warn when the injured party's spouse was an insulator *who worked hands on with asbestos products* from 1950 to 1977). IPC contends that, to extend a legal duty under the facts and circumstances of this case, goes beyond reason and good sense and would be contrary to Oklahoma law.

The Court agrees that in addressing the duty of care issue, the specific factual context of this case must drive the analysis. Plaintiffs attempt to cast a broad net – whether it was foreseeable that a worker's exposure to asbestos was harmful to household members during the relevant time period. But here the issue is more narrowly drawn and requires a determination of the duty of care in a take-home asbestos case where foreseeability is premised upon the worker's "intermittent, non-occupational exposure to asbestos." *See, e.g., Alcoa, Inc. v. Behringer*, 235 S.W.3d 456, 460 (Tex. Ct. App. 2007).[14]

Plaintiffs rely on three types of evidence to establish foreseeability. First, Plaintiffs rely on medical literature that they contend shows that during the relevant time period IPC should have

---

[14] In *Alcoa*, much like the present case, the injured plaintiff's former husband worked at a facility where aluminum ore, a non-asbestos containing product, was manufactured. Equipment used to make the aluminum ore – large industrial pots – were lined with insulation blocks containing asbestos and the plaintiff's exposure arose therefrom. The husband was not a "pot-liner" who worked directly with asbestos when repairs were needed. Instead, like Eugene Bootenhoff, he worked near the pots on-and-off. The Court held no duty was owed to the injured plaintiff because "the danger of non-occupational exposure to asbestos dust on worker's clothes was neither known nor reasonably foreseeable [to the defendant] in the 1950s." *Id.*, 235 S.W.3d at 462.

known of the risk of harm to Norma Bootenhoff. Second, Plaintiffs claim certain discovery responses of IPC demonstrate IPC's actual knowledge – as early as the 1940s – of the risk of harm to family members from take-home exposure to asbestos. Finally, Plaintiffs point to legislation – the 1950s Walsh-Healy Public Contracts Act and the 1972 passage of workplace regulations by OSHA – as establishing foreseeability.

### Plaintiffs' Evidence – Weyerhaueser

As previously set forth, Eugene Bootenhoff worked for Weyerhaueser from 1955 to 1966. His only direct exposure to asbestos occurred in 1959 while employed there.

Plaintiffs submit medical literature to establish foreseeability, that has been reviewed by and forms the basis of the opinion of Plaintiffs' expert, Dr. Barry Castleman. *See* Castleman Affidavit [Doc. No. 239-6]. Based on his extensive study of the medical literature, Dr. Castleman opines: "[T]he hazard of asbestos exposure to families of the workers was scientifically knowable since the 1950s. The risk of mesothelioma especially in individuals with environmental, nonoccupational asbestos exposure became a subject of intense discussion in the early 1960s subsequent to the publication [by] Wagner and his co-workers in 1960." Castleman Affidavit at p. 14, ¶ 60.[15]

The Wagner publication referenced by Castleman is a 1960 article by Dr. J.C. Wagner in the British Journal of Industrial Medicine. In that publication, Wagner discusses second-hand exposure by persons working in or living near asbestos mines in South Africa. It does not address case studies of persons similarly situated to Norma Bootenhoff. Indeed, Dr. Castleman's own writings acknowledge that "little attention was paid directly to the families of asbestos workers until the

---

[15] Plaintiffs have included the Wagner publication in their submissions to the Court. *See* Wagner Publication [Doc. No. 239-4].

1960s." *See* Castleman, *Asbestos, Medical and Legal Aspects* (5th ed. 2005) [Doc. No. 239-8] at ECF p. 13.

Plaintiffs' reliance upon the Castleman Affidavit and case studies in the medical field which form the basis of his opinion is inadequate as a matter of law to establish IPC should have known of the dangers of take-home exposure. *Compare Hoyt v. Lockheed Shipbuilding Co.*, No. C12-1648 TSZ, 2013 WL 3270371 at *8 (W.D. Wash. June 26, 2013) (unpublished op.) (addressing virtually identical evidence including a report of Dr. Castleman and concluding the plaintiff's evidence did not establish that "the risk of 'take home' exposure was foreseeable [in the 1950s] *based on common knowledge at the time and in the community*") (emphasis added); *see also Martin v. Cincinnati Gas and Elec. Co.*, 561 F.3d 439, 445-446 (6th Cir. 2009) (addressing Castleman report and treatise materials and concluding during relevant time period up to 1963 these materials failed to provide evidence of "a general awareness of the dangers of bystander exposure-even inside the specialized fields of asbestos manufacture or utility companies"). *See also Estate of Holmes v. Pneumo Abex, L.L.C.*, 955 N.E.2d 1173, 1178-79 (Ill. App. 2011) (finding expert testimony of Dr. Castleman was insufficient to show that at the time decedent's husband was employed by defendant from 1962 to 1963, risk of secondhand exposure to asbestos was foreseeable). The fact of these first reports – *in the medical field* – which began to link the possibility of asbestos-related diseases to household members of workers does not demonstrate the risk of that disease should have been known in the industry by manufacturing companies like IPC. Absent further evidence of a general awareness of

the risk of harm to persons similarly situated to Norma Bootenhoff, this medical literature and the opinion of Dr. Castleman do not establish foreseeability.[16]

Plaintiffs further purport to establish IPC's knowledge, stating that IPC "has known about the dangers of asbestos since the 1940's." *See* Plaintiffs' Response at p. 13. Plaintiffs cite as evidentiary support, IPC's "Preliminary Statement" submitted with its Responses to Plaintiff's Interrogatories [Doc. No. 239-29]. *Id.* at footnote 4. But Plaintiffs extract only a portion of the response without addressing it in its full context. IPC does state that it became "aware by the late 1930s or early 1940s that *exposure to high levels of asbestos dust in its pure or almost pure forms in manufacturing factories, day-in and day-out for a working lifetime*, could cause a condition known as asbestosis." *See* Responses [Doc. No. 239-29], Preliminary Statement at p. 3 (emphasis added). But as to the specific issue here – IPC states: "[i]t was not until the mid-to-late 1970s that the *medical and scientific literature* indicated that jobsite 'bystanders' were at risk." (emphasis added). IPC makes no statement that at that time, *IPC* or its relevant industry had reason to know that bystanders were at risk nor does the statement indicate household members were at risk. Plaintiffs have submitted no other evidence that IPC, or other similarly-situated employers whose facilities contained asbestos, but who did not manufacture asbestos-containing products, knew or should have known of the dangers of take-home exposure during the relevant time period.

Plaintiffs reliance upon the Walsh-Healey Public Contracts Act in effect in the 1950s is also unavailing. *See* Walsh Healey Public Contracts Act [Doc. No. 239-16]. That Act addressed

---

[16]Of note is Dr. Castleman's statement in his opinion that the medical information he relied upon "was available in the medical libraries to anyone who knew how to spell the word asbestosis." *See* Castleman Affidavit, ¶ 61. Dr. Castleman implicitly suggests, therefore, that IPC and its predecessors had a duty to study information available through medical libraries. Imposition of such a duty under the circumstances here goes beyond reason and good sense.

workplace safety and mandated that workers not be exposed to concentrations of atmospheric contaminants hazardous to health. Plaintiffs state that the Act "required [government] contractors to provide facilities to prevent harmful substances on work clothes from getting on street clothes that workers would wear home." *See* Plaintiffs' Response at p. 20.

Plaintiffs fail to identify how the Act constitutes notice to employers of the hazards of non-occupational exposure to asbestos. More significantly, Plaintiffs fail to demonstrate how the Act supports a determination that the risk of harm to a household member, like Norma Bootenhoff, was foreseeable to IPC through its predecessors.

### Plaintiffs' Evidence – Hoerner-Waldorf

Eugene Bootenhoff was employed by Hoerner-Waldorf from 1972 through 1976. It is undisputed he did not have any direct exposure to asbestos during this period of employment.

The only additional evidence Plaintiffs rely upon to establish foreseeability during this time period is the passage of OSHA regulations in 1972. *See* OSHA Regulations [Doc. No. 239-13]. As to those regulations, IPC states that it "learned of the OSHA permissible exposure limit for asbestos on or about the time [the regulations were] promulgated." *See* IPC's Responses [Doc. No. 239-29], Preliminary Statement at p. 4. IPC further states that it "adhered to established threshold limit values and permissible exposure limits as a measure of good industrial hygiene practice." *Id*. Plaintiffs, have relied on IPC's discovery responses and have not refuted these statements.

The OSHA regulations were designed to protect *workers* from excessive *occupational* exposure in the workplace. Plaintiffs rely on OSHA's requirements that employers provide special clothing, change rooms, change lockers and laundering of asbestos contaminated clothing. However,

the regulations impose those requirements where release of airborne asbestos fibers exceed certain exposure limits as designated by the regulations. *See* OSHA Regulations [Doc. No. 239-13].

The 1972 OSHA regulations may have made take-home exposure foreseeable based on an employee's *occupational* exposure where the employee's exposure fell within certain limits. *Compare Chaisson v. Avondale Industries, Inc.*, 947 So.2d 171, 184 (La. App. 2006) (denying the defendant's request for judgment notwithstanding the verdict on issue of duty owed to wife of pipefitter *exposed to asbestos in his daily work* from 1976 to 1978 where the defendant had "knowledge of the presence of asbestos and OSHA's 1972 standards"). In *Chaisson*, an expert testified that "after OSHA's 1972 regulations, asbestos contaminated work clothes were not intended to go into the home" and that "the 1972 OSHA standards" applied to "employees *with a certain exposure level*." *Id.* at 185. But the OSHA regulations do not establish that take-home exposure was foreseeable under the facts of this case. Here, there is no evidence specifically tying OSHA's 1972 regulations to the supervisory-type work performed by Eugene Bootenhoff or his exposure levels at Hoerner Waldorf.[17]

In cases where a duty has been found to exist due to foreseeability of the risk of harm from take-home exposure, the employee's exposure has been direct, the employer has manufactured asbestos or the employee has worked with asbestos products daily, and some evidence of the employer's actual knowledge of the risk of harm has been shown. *See, e.g., Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347 (Tenn. 2008). In *Satterfield,* the plaintiff's complaint contained

---

[17] In this regard, the Court notes that Plaintiffs' expert, Dr. Castleman, has written about a medical expert's 1976 presentation to an OSHA advisory committee in which the "thrust" of the presentation was that "household cases of mesothelioma resulted from *substantial* exposure" and that their occurrence, therefore, "did not necessarily imply that workplace asbestos standards *in 1976* were unsafe." *See* Plaintiff's Response, Castleman, B. *Asbestos, Medical and Legal Aspects* (5th Ed. 2005) [Doc. No. 239-8] at ECF p. 15 (emphasis added).

specific and detailed allegations regarding the defendant's actual knowledge of the alleged dangers posed by asbestos, including company directives regarding the handling of materials containing asbestos. The employee, whose daughter was exposed to asbestos brought home on his work clothes, did not begin working for the defendant until 1973, after passage of the OSHA regulations. The employee worked daily and directly with asbestos-containing materials. The complaint alleged that the defendant had conducted tests at a number of its facilities which revealed "that the levels of asbestos fibers on the workers' clothes were extremely high." *Id*. at 352-53. The court, in the context of a Rule 12(b)(6) motion, held the allegations of the complaint sufficient to state a negligence claim. *Id*. at 367.

Similar facts are wholly absent from the summary judgment record before this Court. Instead, in this case Plaintiffs seek to impose liability on a box manufacturing company whose facilities held equipment and pipe insulation that "more likely than not" contained asbestos,[18] but which did not manufacture asbestos or asbestos-containing products.[19] In addition, Eugene Bootenhoff was directly exposed to asbestos on only two occasions in 1959. All other exposure resulted from his presence on the factory floor supervising other workers who, themselves, appear to have been only intermittently exposed to asbestos. Because Eugene Bootenoff's exposure was intermittent and non-occupational, the risk of harm to Norma Bootenhoff from take-home asbestos exposure was not

---

[18]Plaintiffs submit the expert opinion of Philip John Templin [Doc. No. 239-30]. Templin opines that at Weyerhaeuser and Hoerner Waldorf, it was "more likely than not" that pipe insulation, refractory cement and block insulation materials contained asbestos. *Id*. at p. 12, 14.

[19]As IPC points out, in *Rohrbaugh*, the Tenth Circuit deemed the risk of harm was not foreseeable to the *manufacturer* of asbestos products. IPC states: "Weyerhaeuser and Hoerner Waldorf, as premises owners, should not be held to a higher standard of care than the very companies that manufactured the alleged asbestos-containing products." *See* IPC's Brief at p. 12.

foreseeable as a matter of law. This conclusion is consistent with and supported by Tenth Circuit precedent in *Rohrbaugh I* and *II*.

**b.** *Policy Considerations*

The Court now turns to policy considerations that further support the conclusion that as a matter of law, Defendant does not owe a duty of care to Plaintiffs. *See Lowery*, 160 P.3d at 964 ("In determining the legal question of the existence of a duty of care, the court considers policy factors that lead the law to say a particular plaintiff is entitled to protection."). In addition to the issue of foreseeability, other policy considerations include: (1) the degree of certainty of harm to the plaintiff; (2) moral blame attached to defendant's conduct; (3) need to prevent future harm; (4) extent of the burden to the defendant and consequences to the community of imposing the duty on defendant; and (5) availability of insurance for the risk involved. *Id.* at 964, n. 4.

Here, because the risk of harm to Norma Bootenhoff was not foreseeable, the harm to her as a result of IPC's conduct was not certain. The record is void of evidence of moral blame associated with IPC's conduct. As set forth, there is no evidence of IPC's actual knowledge during the applicable time period and the evidence relied upon is insufficient to establish IPC should have known of the risk of harm to Mrs. Bootenhoff. As to the need to prevent future harm, IPC has acquired the companies that employed Eugene Bootenhoff and there is no evidence that any future harm is likely to occur. Considering the lack of foreseeability in conjunction with these policy considerations further compels the conclusion that IPC owes no duty of care based on the record presented.

In sum, the Court concludes that summary judgment in favor of IPC is proper. IPC owed no duty of care to Norma Bootenhoff and, therefore, Plaintiffs' negligence claim fails as a matter of law.

Based on this determination, the Court need not address the additional issue of causation raised in IPC's summary judgment motion.

### C.      Remaining Claims / Punitive Damages

As set forth above, Plaintiffs concede the only claim against IPC is based on negligence. Because the Court has determined IPC is entitled to judgment as a matter of law on Plaintiffs' negligence claim, Plaintiffs' claim for punitive damages necessarily fails. *See Moore v. Metropolitan Utilities Co.*, 477 P.2d 692, 694 (Okla. 1970) ("In the absence of actual damages, there can be no recovery of exemplary damages."); *see also Hinds v. Warren Transport, Inc.*, 882 P.2d 1099, 1102 (Okla. Civ. App. 1994) ("Only where there is evidence in the record supporting an inference of gross negligence or reckless disregard and/or indifference for the safety of others must the issue of punitive damages be submitted to the jury.").

## V.      IPC's Motion to Strike

IPC has moved to strike a number of exhibits submitted by Plaintiffs in support of their response to IPC's motion for summary judgment. Based on the Court's determination herein granting IPC's motion for summary judgment, the Court finds the motion should be denied as moot.

## VI.      Conclusion

On the record presented and as fully set forth herein, lack of foreseeability and additional policy considerations dictate that IPC did not owe a duty of care to Norma Bootenhoff. Consequently, Plaintiffs' negligence claim fails as a matter of law. Because Plaintiffs allege no other claims against IPC, IPC is entitled to judgment in its favor and against Plaintiffs.[20]

---

[20] The Court previously entered an order granting Plaintiffs leave to file a Third Amended Complaint "to formally allege survival and wrongful death claims and to remove Defendants who have been dismissed from the
(continued...)

IT IS THEREFORE ORDERED that Defendant International Paper Company's Motion for Summary Judgment [Doc. Nos. 230, 231] is GRANTED.

IT IS FURTHER ORDERED THAT Defendant International Paper Company's Combined Motion to Strike and Memorandum of Law in Support [Doc. No. 246] is DENIED as moot.

IT IS SO ORDERED this 30th day of July, 2014.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE

---

[20](...continued)
litigation." *See* Order [Doc. No. 245]. Despite a considerable passage of time since entry of the Court's order, Plaintiffs never filed a Third Amended Complaint, and the Court presumes that the intent to file such a pleading has been abandoned. In any event, in light of the Court's summary judgment ruling, filing a Third Amended Complaint at this time would be futile.