# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

NORMA BOOTENHOFF[1] and )
EUGENE BOOTENHOFF, )
                                      )
       Plaintiffs, )
                                      )
v. )   Case No. CIV-11-1368-D
                                      )
HORMEL FOODS )
CORPORATION, *et al.*, )
                                      )
      Defendants. )

**O R D E R**

Before the Court is the Motion for Summary Judgment of Defendant Cleaver-Brooks, Inc. and Brief in Support [Doc. No. 229]. Plaintiffs have responded [Doc. No. 240] and Defendant has replied [Doc. No. 255]. Also pending before the Court is Defendant Cleaver-Brooks, Inc.'s Objection [Doc. No. 256] pursuant to which Defendant requests the Court to strike certain exhibits submitted by Plaintiffs in support of their response. Plaintiffs have responded to this Objection [Doc. No. 257]. These matters are fully briefed and ready for decision.

**I.**     **Background**

This is a "take-home" or "secondary" asbestos exposure case. Plaintiffs contend Eugene Bootenhoff's clothing was contaminated with asbestos that he took home from the workplace and that his wife, Norma Bootenhoff, was exposed to asbestos when she laundered her husband's work clothes. Norma Bootenhoff was diagnosed with mesothelioma many years later and Plaintiffs allege she contracted the disease as a result of her exposure to asbestos.

---

[1] Eugene Bootenhoff as Personal Representative of the Estate of Norma Bootenhoff has been substituted as Plaintiff. *See* Order [Doc. No. 272].

Plaintiffs seek to impose liability on Defendant Cleaver-Brooks, Inc. (Cleaver-Brooks) as the manufacturer of certain boilers allegedly present in the facilities where Eugene Bootenhoff worked. Plaintiffs allege Cleaver-Brooks manufactured its boilers using asbestos-containing materials.

In the Second Amended Complaint, Plaintiffs bring claims against all Defendants for negligence, strict liability and products liability and seek to recover compensatory and punitive damages. Cleaver-Brooks now moves for judgment as a matter of law on Plaintiffs' products liability and negligence claims contending it owes no duty to warn or duty of care to Plaintiffs.[2]

The Court has addressed by separate order the motion for summary judgment of Defendant International Paper Company (IPC). IPC's predecessor companies, Weyerhaueser and Horner Waldorf, are two of the former employers of Eugene Bootenhoff. As more fully set forth below, Plaintiffs contend a Cleaver-Brooks boiler was used in the facilities of those employers. In responding to Cleaver-Brook's motion for summary judgment, Plaintiffs rely upon virtually identical evidence as that presented in their response to IPC's motion for summary judgment, particularly with respect to the issue of foreseeability. The Court recognizes that Cleaver-Brooks' alleged conduct and relationship to the Plaintiffs is distinct from the alleged conduct and relationship of IPC. Nonetheless, where appropriate and as indicated herein, the Court adopts much of the analysis set forth in its Order granting IPC's Motion for Summary Judgment (the IPC Order) [Doc. No. 272].

---

[2] Plaintiffs originally named multiple defendants in this action. It is unclear from the manner of presentation of claims in the Second Amended Complaint whether Plaintiffs intended to bring a strict liability claim against Cleaver-Brooks. It appears from the record that Plaintiffs do not pursue a strict liability claim against Cleaver-Brooks. In any event, under Oklahoma law, which as discussed *infra*, governs the claims at issue in this lawsuit, strict liability may be imposed only where a defendant engages in an ultrahazardous activity. *See Davis v. City of Tulsa*, 87 P.3d 1106, 1109 (Okla. Civ. App. 2004) ("Under Oklahoma law, a party conducting an ultrahazardous activity is liable for damages regardless of fault.") (citations omitted). There is no evidence to demonstrate that the conduct of Cleaver-Brooks at issue could be deemed ultrahazardous. *Compare Wetsel on Behalf of Wetsel v. Independent School Dist. I-1*, 670 P.2d 986, 990 n. 1 (Okla. 1983) (recognizing use of explosives as an ultrahazardous activity).

## II. Standard Governing Summary Judgment

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and it is material "if under the substantive law it is essential to the proper disposition of the claim." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (internal quotation marks omitted). In making this determination, the Court must view the evidence, and draw reasonable inferences therefrom, in the light most favorable to the party opposing summary judgment. *Garrison v. Gambro, Inc.,* 428 F.3d 933, 935 (10th Cir. 2005).

"The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir.1998) (citation omitted). The burden then shifts to the nonmovant to "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id*. at 671 (citations omitted); *see also* Fed. R. Civ. P. 56(c)(1)(A). The nonmovant must identify facts by reference to affidavits, deposition transcripts or specific exhibits. *Id*. "The court need consider only the cited materials, but may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

### III. <u>Undisputed and Material Facts</u>[3]

The following facts are established by the summary judgment record. Plaintiffs claim exposure to asbestos based on Eugene Bootenhoff's employment with three companies: Eddy Paper a/k/a Weyerhaueser (Weyerhaeuser)[4] in Austin, Minnesota from 1955 to 1966; Mead Container in Fort Smith, Arkansas from 1966 to 1972; and Hoerner Waldorf from 1972 to 1976.[5] Each of these companies manufactured boxes and there is no evidence before the Court that these products contained asbestos.

Plaintiffs claim Cleaver-Brooks is the manufacturer of boilers present at one or more of these facilities and that the boilers were manufactured with asbestos-containing products installed.[6] However, as Cleaver-Brooks states: "Mr. Bootenhoff is not sure of the locations of any Cleaver-

---

[3] Plaintiffs' brief in opposition to Cleaver-Brooks' motion, does not "begin with a section which contains a concise statement of material facts to which the party asserts genuine issues of fact exist" as required by the Local Civil Rules of this Court. *See* LCvR 56.1(c). Plaintiffs, moreover, have made no effort to specifically controvert Cleaver-Brooks' statement of material facts. Those facts, therefore, supported by the evidence of record, are deemed admitted. *Id.*, *see also* Fed. R. Civ. P. 56(e)(2).
   In addition, Plaintiffs have cited voluminous materials but have not identified the material facts in dispute. Instead, Plaintiffs make reference to exhibits in the body of their legal argument without specific reference to factual matters Plaintiffs attempt to establish by those exhibits. The Court may consider evidence in the record not specifically cited by the parties, *see* Fed. R. Civ. P. 56(c)(3), but the Court is not required to comb through Plaintiffs' evidence to determine the bases for a claim that a factual dispute exists. *Mitchell v. City of Moore, Oklahoma*, 218 F.3d 1190, 1199 (10th Cir. 2000).

[4] For consistency in the record, the Court refers to this entity as Weyerhaeuser.

[5] Plaintiffs have also sued Meadwestvaco and MW Custom Papers, LLC as successors to the Mead Corporation which formerly owned Mead Container where Eugene Bootenhoff worked. The Mead Defendants have also moved for summary judgment and that motion is addressed by separate order of the Court.

[6] In support, Plaintiffs submit the most speculative, unreliable, inadmissible and unauthenticated evidence. For example, they attach invoices for repairs to certain boilers located in South Carolina that have no connection to the parties or the conduct at issue in this litigation. *See* Doc. Nos. 240-32; 240-36. They also attach operations manuals for certain models of Cleaver-Brooks boilers, but fail to demonstrate whether these same models are at issue in this litigation *See* Doc. Nos. 240-33; 240-34; and 240-35. Plaintiffs expert, John Philip Templin, similarly did not opine that the boilers contained asbestos. Instead, when giving his opinion as to Eugene Bootenhoff's exposure to asbestos from Cleaver-Brooks' boilers he stated it was "more likely than not" that "the pipe insulation, refractory cement, and block insulation behind refractory materials" contained asbestos. *See* Report of Philip John Templin [Doc. No. 240-19] at p. 12.

4

Brooks boiler but does remember a Cleaver-Brooks boiler at least at one site." *See* Cleaver-Brooks' Motion at p. 3. Mr. Bootenhoff testified that he thought the boiler present at the Weyerhaueser plant in Austin, Minnesota was manufactured by Cleaver-Brooks. *See* Deposition of Eugene Bootenhoff, May 24, 2012 (Bootenhoff Depo) [Doc. No. 229-2] at 38:8-10. Upon further questioning, however, he could not recall specifically. He agreed that he could not pinpoint any specific location where a Cleaver-Brooks boiler was present, but he thought he remembered seeing a Cleaver-Brooks boiler at least at one of the locations. *Id*. at 111:11-112:13.

As described by Mr. Bootenhoff, a Cleaver-Brooks boiler is a package boiler – a finished product placed at a location and ready to function in its capacity as a boiler. It is steel encased and has no external insulation. Piping is supplied by the premises, usually by contractors who hook-up or connect the boiler to the process for which it is intended at the facility. *Id*. 100-107.

During the eleven years he was employed at Weyerhaeuser, Mr. Bootenhoff did not perform any maintenance work in the boiler room or on or inside the boiler at that facility. *Id*. 37:18-21; 38:8-39:1; 43:19-21; 45: 7-9. He testified any such work would have been performed by a boiler maker. *Id*. 103:22-104:4. He recalled that the boiler had a metal shell and testified that no one ever removed the metal shell or any inner casing of the boiler. *Id*. 108:11-109:10. He remembers component parts of the boiler needed to be replaced on only two occasions. He was a supervisor at that time and testified that the work involved fire brick. The replacement job took approximately two days. Mr. Bootenhoff did not personally perform any of the work. *Id*. 114:1-18.

Mr. Bootenhoff worked in Fort Smith, Arkansas at the Mead Container plant from 1966 to 1972. He does not recall working around any asbestos-containing products during his employment there. *Id*. 48:15-23. In addition, the record before the Court indicates that no boiler manufactured

5

by Cleaver-Brooks was located at the Mead Container plant in Arkansas during that time period. *See* Cleaver-Brooks' Reply, Deposition by Written Questions of George Pollan [Doc. No. 255-1].

Mr. Bootenhoff then worked as a plant manager for Hoerner Waldorf in Denver, Colorado from 1972 to 1976. He does not recall working around any asbestos-containing products at Hoerner Waldorf. *See* Bootenhoff Depo at 50: 6-10. When asked if he recalled any maintenance work being performed on the boiler at Hoerner Waldorf, he testified "[n]othing major" other than "inspections." *Id.* at 120: 6-13.

Plaintiffs moved to Oklahoma City, Oklahoma in 1976. Plaintiffs do not allege any exposure to asbestos in Oklahoma.

## IV. Discussion

### A. Choice of Law

The parties dispute the applicable law governing Plaintiffs' claims against Cleaver-Brooks. "A federal court sitting in diversity . . . must apply the substantive law of the forum state, including its choice of law rules." *Otis Elevator Co. v. Midland Red Oak Realty Inc.*, 483 F.3d 1095, 1101 (10th Cir.2007). Thus, the Court looks to Oklahoma's choice-of-law rules in determining what law to apply.

Cleaver-Brooks urges application of Oklahoma law but does not address the applicable factors relevant under Oklahoma's choice-of-law analysis. Plaintiffs contend the claims are governed by Minnesota, Colorado *and* Arkansas law where Eugene Bootenhoff worked in facilities that allegedly used boilers manufactured by Cleaver-Brooks because any asbestos exposure occurred in one of these three states. As set forth in its reply, Cleaver-Brooks submits evidence that the Mead Container facility in Arkansas did not contain a Cleaver-Brooks boiler during the period of Eugene

6

Bootenhoff's employment there. Cleaver-Brooks contends this fact defeats application of Arkansas law.

This Court has previously conducted a thorough choice-of-law analysis in its IPC Order. The Court concluded that Oklahoma law governs Plaintiffs' negligence claim against IPC. For substantially the same reasons set forth in the IPC Order, the Court finds Oklahoma law governs the claims here.

As more fully discussed in the IPC Order, under Oklahoma's choice-of-law rules, this Court must apply the tort law of the state with the most significant relationship to the occurrence and the parties. *See Hightower v. Kan. City Southern Ry. Co.*, 70 P.3d 835, 842 (Okla.2003) This test requires the consideration of four factors: (1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship, if any, between the parties occurred. *Id.* (internal quotation marks omitted); *see also Brickner v. Gooden*, 525 P.2d 632, 637 (Okla. 1974).

Two factors direct application of Oklahoma law – place of injury[7] and place of domicile. Plaintiffs do not dispute that the Bootenhoffs have resided in Oklahoma since 1976, that Norma Bootenhoff lived in Oklahoma at the time of her death, and that Eugene Bootenhoff continues to reside in Oklahoma. Plaintiffs further acknowledge that Cleaver-Brooks is a Delaware corporation with its principal place of business in Wisconsin and that "Minnesota, Arkansas and Colorado are not one of the states where either party is domiciled." *See* Plaintiff's Response at pp. 5-6.

---

[7]Oklahoma, as the place where Norma Bootenhoff was diagnosed with mesotheliomia, is the place of injury under Oklahoma's choice-of-law rules.

The other remaining two factors – place of occurrence and place of relationship – are not determinative where, as here, Plaintiffs contend multiple states are involved. Therefore, Oklahoma law applies as it is this state that has the *most* significant relationship to the occurrence and the parties.

**B.     Plaintiffs' Tort Claims**

Cleaver-Brooks seeks summary judgment on Plaintiffs' claims of products liability and negligence on grounds it owed no duty to Plaintiffs under Oklahoma law. Plaintiffs, relying exclusively on case law from other jurisdictions, contend the risk of harm to Norma Bootenhoff was foreseeable and, therefore, Cleaver-Brooks is not entitled to summary judgment.

### 1.     *Products Liability – Duty to Warn*

Plaintiffs' products liability claim is foreclosed by Tenth Circuit precedent applying Oklahoma law. In *Rohrbaugh v. Owens-Corning Fiberglass Corp.*, 965 F.2d 844, 847 (10th Cir. 1992) (*Rohrbaugh I*), the Tenth Circuit held that the wife of an insulator who worked with asbestos was not a foreseeable user of the products and, therefore, no duty to warn was owed to the wife under Oklahoma's products liability law.[8] As in this case, in *Rohrbaugh I*, the wife developed mesothelioma and claimed she had been exposed to asbestos dust when she laundered her husband's work clothes. The Tenth Circuit found jury instruction error because the instructions imposed on the defendants a duty to warn, contrary to Oklahoma law. The Tenth Circuit held:

> Under Oklahoma law, a manufacturer may have a duty to warn consumers of potential hazards which occur from the use of its products. . . . This duty to warn, however, only extends to ordinary consumers and users of the products. . . .

---

[8] Plaintiffs, though fully aware of the Tenth Circuit's *Rohrbraugh* decision, have wholly failed to address it in responding to Cleaver-Brooks' motion.

8

> Applying these standards to the facts in this case, we find that Appellants did not have a duty to warn Mrs. Palmer of the dangers associated with their products because Mrs. Palmer was not a foreseeable purchaser or user of the product. Appellants could not have foreseen that Mrs. Palmer would be exposed to their products in the manner in which she was. It is undisputed that Mrs. Palmer was never exposed to asbestos as a user or present where the product was used. Her exposure to asbestos dust, it is asserted, was brought about by contact with her husband's work clothes. To hold that Appellants could reasonably foresee that Mrs. Palmer would be affected by their products would be an overextension of Oklahoma manufacturer's products liability law.

*Id.* at 846-47 (citations omitted).

The record before the Court shows that Norma Bootenhoff was never exposed to asbestos as a user or present where the product was used. Thus, Plaintiffs' claim of manufacturer's products liability fails under Oklahoma law and Cleaver-Brooks is entitled to summary judgment on this claim.[9]

### 2. *Negligence – Duty of Care*

The Court has extensively addressed Oklahoma law governing Plaintiffs' negligence claim in the IPC Order and, particularly, the issue of duty of care – the threshold issue in any negligence action. Under Oklahoma law, duty of care depends upon the foreseeability of harm and additional policy considerations. *See, e.g., Lowery v. Echostar Satellite Corp.*, 160 P.3d 959, 964 (Okla. 2007).

---

[9] Though not directly addressed by the parties, it appears to the Court, based on the summary judgment record, that Plaintiffs' products liability claim would also fail due to the absence of sufficient evidence that Cleaver-Brooks' products were the cause of the injury to Plaintiffs. *See Clark v. Mazda Motor Corp.*, 68 P.3d 207, 209 (Okla. 2003) (a manufacturer's products liability claim requires proof that: (1) the product was the cause of the injury; (2) the defect existed in the product at the time the product left the manufacturer's control; and (3) the defect made the product unreasonably dangerous). The only evidence purporting to establish the presence of a Cleaver-Brooks boiler at any of the facilities where Eugene Bootenhoff worked is his deposition testimony. A review of that testimony shows, at best, speculation as to the presence of a Cleaver-Brooks boiler at those facilities. And in fact, the record shows no Cleaver-Brooks boiler was used at the Mead Container facility during the period of Eugene Bootenhoff's employment there.

9

As set forth in the IPC Order, factual context matters. Here, the record demonstrates that Eugene Bootenhoff did not perform any maintenance work on any boilers and was present on very limited occasions when a boiler may have been opened up and worked on. His only exposure to any boiler was as a supervisor, present on the production floor in the vicinity of the boiler. The Cleaver-Brooks' boilers were steel encased and had no external insulation. Plaintiffs have submitted no evidence demonstrating actual knowledge by Cleaver-Brooks that, under circumstances at issue here, its boilers could cause a risk of harm to a person, like Norma Bootenhoff, alleged to have been exposed via take-home exposure from her husband's work clothes. *See Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1183-84 (10th Cir. 1995) (*Rohrbaugh II*) ("Because of our holding in *Rohrbaugh I* that Mrs. Palmer was not a foreseeable purchaser or user of the product manufactured by OCF and that Defendants "could not have foreseen that Mrs. Palmer would be exposed to their products in the manner in which she was[,]" the threshold question of duty is not satisfied.").

In addition, the evidence Plaintiffs rely upon to establish Cleaver-Brooks should have known during the relevant time period that the presence of asbestos products inside their metal-encased boilers would create a risk of harm to someone like Norma Bootenhoff is insufficient as a matter of law. Plaintiffs rely upon virtually identical evidence as that submitted in response to IPC's motion for summary judgment: (1) medical literature – including the opinion of their expert, Dr. Barry Castleman, about that literature purporting to show that during the relevant time period Cleaver-Brooks should have known of the risk of harm to Norma Bootenhoff; and (2) legislation – the 1950s

10

Walsh-Healy Public Contracts Act and the 1972 passage of workplace regulations by OSHA – as establishing foreseeability.[10]

Plaintiffs contend that, as a manufacturer, Cleaver-Brooks must be held to have the "knowledge and skill of an expert" and had a duty to "keep abreast of scientific knowledge." *See* Plaintiffs' Response at 13. Plaintiffs cite no Oklahoma law to support imposition of this higher standard. But even assuming such a requirement were imposed by Oklahoma law, Plaintiff's "scientific evidence" fails to establish that Cleaver-Brooks should have known of any risk of take-home exposure to asbestos from its boilers during the relevant time period, particularly where, as here, Eugene Bootenhoff's exposure was limited, non-occupational and indirect. Therefore, based on the present record and law set forth herein and incorporated from the IPC Order, Cleaver-Brooks is entitled to judgment as a matter of law in its favor on Plaintiffs' negligence claim.[11]

## V.  Cleaver-Brook's Motion to Strike

Cleaver-Brooks has moved to strike a number of exhibits submitted by Plaintiffs in support of their response to Cleaver' Brooks' motion for summary judgment. The Court has addressed the objectionable nature of some of that evidence herein. And, while the Court agrees that much of the evidence is improper, based on the Court's determination that Cleaver-Brooks is entitled to summary judgment on Plaintiffs' claims, the Court finds the motion should be denied as moot.

---

[10] Plaintiffs additionally cite the Pennsylvania Occupational Disease Act of 1939 [Doc. No. 240-29 and 240-30]. Plaintiffs' state that "[a]s the owner of an industrial factory in Pennsylvania, Cleaver Brooks was subject to this act." *See* Plaintiffs' Response at p. 19. But Plaintiffs fail to direct the Court to any relevant provisions of the Act. Nor do Plaintiffs attempt to explain its content or tie anything other than the fact of its passage to the foreseeability issue before the Court.

[11] Although not expressly addressed by Cleaver-Brooks or Plaintiffs, based on this conclusion, Plaintiffs' claims for punitive damages necessarily fail, for the reasons more fully set forth in the Court's IPC Order.

11

## VI. Conclusion

On the record presented and as set forth herein, lack of foreseeability and additional policy considerations dictate that IPC did not owe a duty to warn or a duty of care to Norma Bootenhoff. Consequently, Plaintiffs' products liability and negligence claims fail as a matter of law. Cleaver-Brooks, therefore, is entitled to judgment in its favor and against Plaintiffs.[12]

IT IS THEREFORE ORDERED that Defendant Cleaver-Brooks, Inc.'s Motion for Summary Judgment and Brief in Support [Doc. No. 229] is GRANTED.

IT IS FURTHER ORDERED that Defendant Cleaver-Brooks, Inc.'s Objection to Plaintiffs' Opposition to Summary Judgment Evidence [Doc. No. 256] be DENIED as moot.

IT IS SO ORDERED this 1st day of August, 2014.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE

---

[12] The Court previously entered an order granting Plaintiffs leave to file a Third Amended Complaint "to formally allege survival and wrongful death claims and to remove Defendants who have been dismissed from the litigation." *See* Order [Doc. No. 245]. As set forth in the Court's IPC Order, Plaintiffs appear to have abandoned their intent to file a Third Amended Complaint. Moreover, in light of the Court's summary judgment rulings, filing the Third Amended Complaint at this time would be futile.