IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

NORMA BOOTENHOFF[1] and )
EUGENE BOOTENHOFF, )
 )
      Plaintiffs, )
 )
v. ) Case No. CIV-11-1368-D
 )
HORMEL FOODS )
CORPORATION, *et al.,* )
 )
      Defendants. )

**O R D E R**

Before the Court is the Motion for Summary Judgment of Defendants Meadwestvaco Corporation and MW Custom Papers, LLC and Brief in Support [Doc. No. 190]. Plaintiffs have responded to the Motion [Doc. No. 198] and Defendants have filed a reply [Doc. No. 212]. Also before the Court is Defendants' Motion to Strike Certain Exhibits in Plaintiffs' Evidentiary Materials and Brief in Support [Doc. No. 213], Plaintiffs' response thereto [Doc. No. 218] and Defendants' reply [Doc. No. 221]. These matters are fully briefed and ready for decision.

**I.    Background**

This is a "take-home" or "secondary" asbestos exposure case. Plaintiffs contend Eugene Bootenhoff's clothing was contaminated with asbestos that he took home from the workplace and that his wife, Norma Bootenhoff, was exposed to asbestos when she laundered her husband's work clothes. Norma Bootenhoff was diagnosed with mesothelioma many years later and Plaintiffs allege she contracted the disease as a result of her exposure to asbestos.

---

[1] Eugene Bootenhoff as Personal Representative of the Estate of Norma Bootenhoff has been substituted as Plaintiff. *See* Order [Doc. No. 272].

Plaintiffs seek to impose liability on Defendants Meadwestvaco Corporation and MW Custom Papers, LLC (the Mead Defendants) and allege that the asbestos exposure occurred, in part, during Eugene Bootenhoff's former employment with Mead Container, owned by the Mead Corporation, a predecessor to these companies.[2]

Plaintiffs bring a negligence claim against the Mead Defendants and seek to recover compensatory and punitive damages. The Mead Defendants move for judgment as a matter of law on Plaintiffs' negligence claim.[3]

The Court has addressed by separate order the motion for summary judgment of Defendant International Paper Company (IPC).[4] IPC's predecessor companies, Weyerhaueser and Horner Waldorf, are two of the former employers of Eugene Bootenhoff where Plaintiffs also allege exposure to asbestos occurred. Plaintiff worked at Mead Container in between his periods of employment with Weyerhaueser and Horner Waldorf. As more fully set forth below, in responding to the Mead Defendants' motion for summary judgment, Plaintiffs rely upon much of the same evidence as that presented in their response to IPC's motion for summary judgment, particularly with respect to the issue of foreseeability. Where appropriate and as indicated herein, the Court adopts

---

[2] The Mead Defendants state that "[t]he premise at issue in this case was once owned by The Mead Corporation" and that MW Custom Papers, LLC, not Meadwestvaco Corporation, is the relevant successor to The Mead Corporation." *See* Defendants' Motion at pp. 2-3 n. 1. The Mead Defendants further set forth in more detail the relationship amongst them. Those facts are not material to the issues presented for the Court's determination.

[3] Although Plaintiffs' Second Amended Complaint includes claims for strict liability and manufacturer's products liability, in responding to the Mead Defendants' summary judgment motion, Plaintiffs expressly concede they do not seek recovery against the Mead Defendants on the basis of products liability. *See* Plaintiffs' Response at p. 11 ("Plaintiffs are not making product liability claims against [the Mead Defendants]."). Moreover, the record is void of any evidence that would subject the Mead Defendants to strict liability under a theory they were engaged in an ultrahazardous activity. *Compare Wetsel on Behalf of Wetsel v. Independent School Dist. I-1*, 670 P.2d 986, 990 n. 1 (Okla. 1983) (recognizing use of explosives as an ultrahazardous activity).

[4] The Court has also addressed by separate order the motion for summary judgment of Defendant Cleaver-Brooks, Inc., the only other remaining defendant in this action.

the analysis set forth in its Order granting IPC's Motion for Summary Judgment (the IPC Order) [Doc. No. 272].

## II. Standard Governing Summary Judgment

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and it is material "if under the substantive law it is essential to the proper disposition of the claim." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (internal quotation marks omitted). In making this determination, the Court must view the evidence, and draw reasonable inferences therefrom, in the light most favorable to the party opposing summary judgment. *Garrison v. Gambro, Inc.,* 428 F.3d 933, 935 (10th Cir. 2005).

"The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir.1998) (citation omitted). The burden then shifts to the nonmovant to "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id*. at 671 (citations omitted); *see also* Fed. R. Civ. P. 56(c)(1)(A). The nonmovant must identify facts by reference to affidavits, deposition transcripts or specific exhibits. *Id*. "The court need consider only the cited materials, but may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that

one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

III. **The Record Before the Court**

In its motion, the Mead Defendants set out a "Statement of Material Undisputed Facts" and identify seven facts supported by citation to the summary judgment record. Plaintiffs, in their response brief, did not include a section stating which, if any, of those facts are either undisputed or immaterial, ignoring the requirements of the Local Civil Rules of this Court.[5]

Moreover, Plaintiffs have submitted 42 exhibits in response to the Mead Defendants' motion. More than half of those exhibits are not cited anywhere in Plaintiffs' response brief. Many of the uncited exhibits are voluminous. For example, Exhibit 41 is 763 pages in length. The Court admonishes counsel for the careless and excessive presentation of evidentiary materials resulting in needless expense of client and judicial resources.

When challenging the movant's assertion that a fact is undisputed, the responding party has the burden "to ensure that the factual dispute is portrayed with particularity, without . . . depending on the trial court to conduct its own search of the record." *Cross v. The Home Depot*, 390 F.3d 1283,

---

[5] Pursuant to the Local Civil Rules of this Court:

> The brief in opposition to a motion for summary judgment (or partial summary judgment) shall begin with a section which contains a concise statement of material facts to which the party asserts issues of fact exist. Each fact in dispute shall be numbered, shall refer with particularity to those portions of the record upon which the opposing party relies and, if applicable, shall state the number of the movant's facts that is disputed. All material facts set forth in the statement of the material facts of the movant may be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of material facts of the opposing party.

LCvR 56.1(c).

1290 (10th Cir.2004) (quotations omitted).[6] If a nonmovant "fails to properly address another party's assertion of fact as required by Rule 56(c)," the fact may be deemed admitted for purposes of the motion. Fed.R.Civ.P. 56(e)(2). Accordingly, pursuant to LCvR 56.1 and Fed. R. Civ. P. 56(e)(2), the Mead Defendants' Statement of Fact Nos. 1-7 are deemed admitted for purposes of this motion. These and additional facts discussed *infra*, are established by the summary judgment record.

**Material and Undisputed Facts**

The parties agree that, as to the Mead Defendants, any alleged asbestos exposure occurred in Arkansas during Mr. Bootenhoff's employment at Mead Container. They do not contend that any exposure occurred in Oklahoma.

Eugene Bootenhoff worked at Mead Container from 1966 through mid-summer 1972. He was a plant superintendent and was in charge of operations and administrations. He spent approximately 35 percent of his time in an office and the remaining 65 percent of his time on the production floor. He did not perform any hands-on work with any of the machinery. However, he was sometimes present when the boiler was opened up for work and when pumps were serviced by others.

The Mead Container plant manufactured boxes. There is no evidence in the record that the boxes contained asbestos. Rather, the alleged exposure resulted from the presence of asbestos in pipe insulation and the boiler used to operate machinery at the facility. *See* Plaintiffs' Response at p. 4 ("Mr. Bootenhoff worked for Mead at a Mead box manufacturing facility in Fort Smith,

---

[6]Plaintiffs include citation to evidence throughout the body of the legal argument presented in their response brief. Many of the citations are to exhibits that are voluminous and made without specific reference to factual matters Plaintiffs attempt to establish by the exhibits. The Court is "not obligated to comb the record" to determine the basis for a claim that a factual dispute exists. *Mitchell v. City of Moore, Oklahoma*, 218 F.3d 1190, 1199 (10th Cir.2000).

5

Arkansas from 1966 to 1971. During this time Mr. Bootenhoff was exposed to asbestos from pipe and boiler insulation.") (citing deposition testimony of Eugene Bootenhoff). There is no evidence in the record that Mr. Bootenhoff experienced any direct exposure to asbestos during his employment at Mead Container. And, Eugene Bootenhoff did not personally handle any asbestos-containing products during his employment there.

Norma Bootenhoff visited Mead Container only a couple of times a year. Mr. Bootenhoff could not recall her ever being present when the boiler was open for maintenance or when a pump was being serviced.

It is further undisputed that the Bootenhoffs have lived in Oklahoma since 1976. Norma Bootenhoff was diagnosed with mesothelioma while domiciled in Oklahoma and she later died from the disease. At the time of her death Norma Bootenhoff was domiciled in Oklahoma and Eugene Bootenhoff continues to reside in Oklahoma. In this action, Mr. Bootenhoff is not making any claims that he has suffered from any asbestos-related disease.

## IV. Discussion

### A. Choice of Law

The parties dispute the applicable law governing Plaintiffs' negligence claim. "A federal court sitting in diversity . . . must apply the substantive law of the forum state, including its choice of law rules." *Otis Elevator Co. v. Midland Red Oak Realty Inc.*, 483 F.3d 1095, 1101 (10th Cir.2007). Thus, the Court looks to Oklahoma's choice-of-law rules in determining what law to apply.

Plaintiffs contend the claims are governed by Arkansas law where Eugene Bootenhoff worked for Mead Container. The Mead Defendants urge application of Oklahoma law because

Oklahoma is where Plaintiffs have been domiciled and where the Mead Defendants contend the injury to Norma Bootenhoff occurred.

This Court has previously conducted a thorough choice-of-law analysis in its order ruling on the motion for summary judgment filed by Defendant International Paper Company (IPC). The Court concluded that Oklahoma law governs Plaintiffs' negligence claim against IPC.

For substantially the same reasons set forth in that order, the Court finds Oklahoma law governs the claims here. As more fully discussed in the IPC Order, under Oklahoma's choice-of-law rules, this Court must apply the tort law of the state with the most significant relationship to the occurrence and the parties. *See Hightower v. Kan. City Southern Ry. Co.*, 70 P.3d 835, 842 (Okla. 2003). This test requires the consideration of four factors: (1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship, if any, between the parties occurred. *Id.* (internal quotation marks omitted); *see also Brickner v. Gooden*, 525 P.2d 632, 637 (Okla. 1974).

Two factors direct application of Oklahoma law – place of injury[7] and place of domicile. As set forth, the Bootenhoffs have lived in Oklahoma since 1976 and Norma Bootenhoff was diagnosed with and later died as a result of mesothelioma while a resident of Oklahoma. The place-of-occurrence factor, as to the Mead Defendants, would support application of Arkansas law. The alleged exposure to asbestos occurred at Mead Container in Fort Smith, Arkansas. The place-of-relationship factor is not compelling. The relationship between the Mead Defendants and Plaintiffs

---

[7] Oklahoma, as the place where Norma Bootenhoff was diagnosed with mestheliomia, is the place of injury under Oklahoma's choice-of-law rules.

is attenuated. Norma Bootenhoff has no relationship with these Defendants or their predecessor, Mead Container. And Eugene Bootenhoff's only relationship with Defendants is through his employment with their predecessor company.

Applying these factors, and for the additional reasons set forth in the IPC Order, the Court concludes Oklahoma law applies as it is this state that has the *most* significant relationship to the occurrence and the parties.[8]

**B.     Negligence**

   **1.     *Duty of Care***

The Court has extensively addressed Oklahoma law governing Plaintiffs' negligence claim in the IPC Order and, particularly, the issue of duty of care – the threshold issue in any negligence action. Under Oklahoma law, duty of care depends upon the foreseeability of harm and additional policy considerations. *See, e.g., Lowery v. Echostar Satellite Corp.*, 160 P.3d 959, 964 (Okla. 2007). The Court incorporates the analysis set forth in the IPC Order. The Court further considers the evidence presented by Plaintiffs, subject to the standards governing the manner of their presentation of that evidence discussed *supra*, to determine whether the Mead Defendants owed a duty of care to Plaintiffs.

---

[8] This result is further compelled by the fact that Plaintiffs neither urge application of, nor cite authority that would permit reliance upon, the doctrine of depecage. That doctrine provides for the application of different states' laws to separate issues in a case. The Tenth Circuit has recognized that Oklahoma has not "ruled on or adopted the use of depecage" and that its case law does not demonstrate approval of its use. *Perkins v. Chris Hunt Water Hauling Contractor, Inc.*, 46 Fed. Appx. 903, 906 (10th Cir. 2002) (unpublished op.). Moreover, where allowed, depecage applies to the different *issues* presented in a case, not to different *defendants*. *See, e.g., Gregory v. Beazer East*, 892 N.E.2d 563, 580 (Ill. App. 2008). As the court recognized in *Gregory*, depecage is inappropriate in the context of multi-defendant asbestos litigation because, *inter alia*, "applying different legal standards to each joint tortfeasor-defendant in a multidefendant suit alleged to have caused a single injury could lead to inconsistent results." *Id*.

### a. Foreseeability

With respect to the Mead Defendants, the time period relevant to Plaintiffs' claims against them is 1966 through mid-summer 1972. In addition, as set forth in the Court's IPC Order, factual context matters in addressing the issue of foreseeability. Here, Eugene Bootenhoff's exposure to asbestos resulted from his presence in the factory as a supervisor. The products manufactured there did not contain asbestos. Instead, any exposure was from pipe insulation materials and a boiler that allegedly contained asbestos products. Eugene Bootenhoff never did any installation or repair work that exposed him to asbestos, but at most supervised others who, themselves, were only occasionally exposed to asbestos. Thus, Eugene Bootenhoff's exposure was intermittent and non-occupational.

As an initial matter, the Court addresses the fact that Plaintiffs impermissibly intermix the Mead Corporation's role as a manufacturer of asbestos-containing products with the role of Mead Container at issue in this litigation. For example, Plaintiffs contend that "[a]s an asbestos product manufacturer, Mead is held to an expert standard." *See* Plaintiffs' Response at p. 16. But the Mead Defendants are not sued in this litigation as manufacturers of asbestos products; rather they are sued as the successors to Mead Container, an owner of a plant that manufactured boxes – a product that did not contain asbestos. And Plaintiffs concede they do not bring a products liability claim against the Mead Defendants.

Plaintiffs rely upon evidence related to the Mead Corporation's role as an asbestos product manufacturer to establish that the Mead Defendants' predecessor knew or should have known of the risk of harm from take-home exposure to asbestos. For example, Plaintiffs point to a document purporting to be minutes from a 1969 meeting of the Health & Safety Council of the ACPA which they contend shows that "'neighborhood plaintiffs' were 'foreseeable.'" *See* Plaintiffs' Response at

9

p. 20. Plaintiffs contend the Mead Defendants are charged with knowledge of these minutes because "the Cement Asbestos Products Company (for which Mead provided management and owned 51%) sent a representative" to this meeting. *See* Plaintiffs' Response at p. 20.

The minutes reflect factual circumstances unlike those at issue here involving "people who lived near a plant or mining facility that emits asbestos fibers into the air *on a more or less continuous basis for a lengthy period of time*." *See id.* (emphasis added); *see also* Plaintiffs' Response, Minutes [Doc. No. 198-5]. Notwithstanding issues of the propriety of Plaintiffs' use of this evidence pursuant to Fed. R. Civ. P. 56, the evidence is wholly irrelevant to the facts and circumstances of this case. The Court rejects Plaintiffs' reliance upon this and other evidence regarding the manufacture of asbestos products by the Mead Corporation. That evidence does not pertain to the dangers of take-home exposure in a facility that only manufactured boxes – products that contained no asbestos.

Plaintiffs submit additional evidence to establish the Mead Defendants should have known of the risk of harm at issue here. Plaintiffs rely on medical literature that they contend shows that during the relevant time period (1966 through mid-summer 1972) the Mead Defendants should have known of the risk of harm to a person similarly situated to Norma Bootenhoff. In addition, Plaintiffs point to legislation – the 1950s Walsh-Healy Public Contracts Act and the 1972 passage of workplace regulations by OSHA – as establishing foreseeability. This evidence is virtually identical to the evidence Plaintiffs relied upon in responding to IPC's motion for summary judgment.[9]

---

[9]Plaintiffs also cite 1946 legislation in the State of Ohio which purportedly established levels for the maximum allowable concentration of asbestos in the workplace. *See* Plaintiffs' response at p. 19. But, as with Plaintiffs' citation to the OSHA regulations, Plaintiffs fail to submit evidence tying the Ohio legislation to the supervisory-type work performed by Eugene Bootenhoff or his exposure levels at Mead Container.

For substantially the same reasons as set forth in the IPC Order, this evidence is insufficient as a matter of law to establish the risk of harm was foreseeable.[10] Here, Plaintiffs seek to impose liability on a box manufacturing company whose facilities held equipment and pipe insulation that may have contained asbestos but which did not manufacture asbestos or asbestos-containing products. In addition, Eugene Bootenhoff was never directly exposed to asbestos during his employment at Mead Container. His exposure resulted only from his presence on the factory floor supervising other workers who, themselves, appear to have been only intermittently exposed to asbestos. Because Eugene Bootenoff's exposure was intermittent and non-occupational, the risk of harm to Norma Bootenhoff from take-home asbestos exposure was not foreseeable as a matter of law. As fully addressed in the Court's IPC Order, this conclusion is consistent with and supported by Oklahoma law.

### b. *Policy Considerations*

The Court further addresses policy considerations that support the conclusion that as a matter of law, the Mead Defendants do not owe a duty of care to Plaintiffs. *See Lowery*, 160 P.3d at 964 ("In determining the legal question of the existence of a duty of care, the court considers policy factors that lead the law to say a particular plaintiff is entitled to protection."). In addition to the issue of foreseeability, other policy considerations include: (1) the degree of certainty of harm to the plaintiff; (2) moral blame attached to the defendant's conduct; (3) need to prevent future harm; (4) extent of the burden to the defendant and consequences to the community of imposing the duty on the defendant; and (5) availability of insurance for the risk involved. *Id*. at 964, n. 4.

---

[10] The OSHA regulations were published at virtually the same time that Eugene Bootenhoff's employment at Mead Container *ended*. This fact further compels the conclusion that the OSHA regulations cannot serve as a factual basis to support the foreseeability of harm resulting from take-home exposure.

11

Here, because the risk of harm to Norma Bootenhoff was not foreseeable, the harm to her as a result of the Mead Defendants' conduct was not certain. The record is void of evidence of moral blame associated with the Mead Defendants' conduct. As to the need to prevent future harm, the Mead Defendants have acquired the company that employed Eugene Bootenhoff and there is no evidence that any future harm is likely to occur. Considering the lack of foreseeability in conjunction with these policy considerations compels the conclusion that the Mead Defendants owe no duty of care on the record presented.

In sum, the Court concludes that summary judgment in favor of the Mead Defendants is proper. The Mead Defendants owe no duty of care to Norma Bootenhoff and therefore, Plaintiffs' negligence claim fails as a matter of law.[11]

## V. The Mead Defendants' Motion to Strike

The Mead Defendants have moved to strike a number of exhibits submitted by Plaintiffs in support of their response to the Mead Defendants' motion for summary judgment. As noted herein, much of that evidence is of an objectionable nature. And, while the Court agrees that much of the evidence is improper, based on the Court's determination that the Mead Defendants are entitled to summary judgment on Plaintiffs' claims, the Court finds the motion should be denied as moot.

## VI. Conclusion

On the record presented and as fully set forth herein, lack of foreseeability and additional policy considerations dictate that the Mead Defendants did not owe a duty of care to Norma Bootenhoff. Consequently, Plaintiffs' negligence claim fails as a matter of law. Because Plaintiffs

---

[11] Although not expressly addressed by the Mead Defendants or Plaintiffs, based on this conclusion, Plaintiffs' claims for punitive damages necessarily fail for the reasons more fully set forth in the Court's IPC Order.

allege no other claims against the Mead Defendants, they are entitled to judgment in their favor and against Plaintiffs.[12]

IT IS THEREFORE ORDERED that the Motion for Summary Judgment of Defendants Meadwestvaco Corporation and MW Custom Papers, LLC and Brief in Support [Doc. No. 190] is GRANTED.

IT IS FURTHER ORDERED THAT Defendants' Motion to Strike Certain Exhibits in Plaintiffs' Evidentiary Materials and Brief in Support [Doc. No. 213] is DENIED as moot.

IT IS SO ORDERED this 1st day of August, 2014.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE

---

[12] The Court previously entered an order granting Plaintiffs leave to file a Third Amended Complaint "to formally allege survival and wrongful death claims and to remove Defendants who have been dismissed from the litigation." *See* Order [Doc. No. 245]. As set forth in the Court's IPC Order, Plaintiffs appear to have abandoned their intent to file a Third Amended Complaint. Moreover, in light of the Court's summary judgment rulings, filing the Third Amended Complaint at this time would be futile.